### PHILADELPHIA & R. RY. CO. v. BERMAN.

(Circuit Court of Appeals, Third Circuit. February 1, 1924.)

No. 3056.

Commerce ⊚⟶27(7)—Master and servant ⊚⟶284(I), 286(I3)—Railroad man switching cars held engaged in "interstate commerce"; employment in interstate commerce and violation of Safety Appliance Act held for jury.

Defendant railroad company brought into its yards a train of 16 cars, 2 of which contained interstate freight. Plaintiff, one of the switching crew distributing such cars, was injured when between 2 of the cars attempting to adjust an alleged defective coupling. Held, that defendant was at the time engaged in interstate commerce; that the questions whether plaintiff was employed in such commerce and whether de-

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fendant was chargeable with violation of Safety Appliance Act, § 2, (Comp. St. § 8606), which contributed to the injury and brought the case within Employers' Liability Act, §§ 3, 4 (Comp. St. §§ 8659, 8660), were properly submitted to the jury.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

In Error to the District Court of the United States for the District of New Jersey; Wm. N. Runyon, Judge.

Action at law by Israel Berman against the Philadelphia & Reading Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Katzenbach & Hunt and Edward L. Katzenbach, all of Trenton, N. J., for plaintiff in error.

Jacob Spiro, of New York City (Humphrey J. Lynch, of New York City, of counsel), for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMSON, District Judge.

THOMSON, District Judge. This is an appeal by the Philadelphia & Reading Railway Company from a judgment in favor of Berman, in the sum of $11,200, for personal injuries, after a trial by jury. The action is brought under the federal Employers' Liability Act (Comp. St. §§ 8657–8665) and the Safety Appliance Act (Comp. St. § 8605 et seq.) and as there is no diversity of citizenship, the jurisdiction of the court depends upon proof that both Berman and the railway company were at the time of the injury engaged in interstate commerce. There seems to be no reasonable doubt that the railway company was engaged in interstate commerce. The accident happened at Fair Hill Junction yard of the railway company in Philadelphia. Berman at the time of the injury was assisting in breaking up an interstate train, in which train of 16 cars there were 2 containing interstate shipments of freight. This train had come in from New Jersey or New York. When such trains arrive at the junction, the regular engine is detached, and the yard engine is used for the purpose of distributing the cars to the various tracks, according to their ultimate destination. After certain testimony had been introduced on the question of the interstate character of the operation, a stipulation was entered into, which appears on page 75 of the record, the substance of which is that the draft of 16 cars that was being broken up and shunted by the switch engine, of the crew of which the plaintiff was a member, consisted of two cars, which had in them freight, which had either come from without the state of Pennsylvania, or which freight was destined to go beyond the confines of the state. The other 14 cars had not come from without the state, and were not destined to go beyond the state.

Under all the circumstances, there seems to be no difficulty in finding that the railway company was engaged in interstate commerce. The yard in question was a very busy yard, requiring the constant moving of trains to avoid congestion, there being evidence that from 50 to 250 trains arrived in the yard daily. At the time of the acci-

dent, they were anticipating the arrival of other trains, the accommodation of which required prompt removal, shunting, and classifying of the train that was being broken up, at the time the plaintiff was injured. The jury was well warranted under the evidence in finding that the employé at the time of the injury was engaged in interstate transportation, or in work so closely related to it as to be practically a part of it. Particularly is this true in the absence of any evidence offered by the company to disprove the interstate character of plaintiff's work. There does not appear to be any dispute in the record that just before Berman was injured he had stepped between 2 cars that had been shunted from the train of 16 cars, containing interstate freight, for the purpose of adjusting the coupling equipment, that would not automatically couple unless adjusted by him, and that this adjustment could only be accomplished by stepping between the cars. The law requires that the coupling shall be completed by impact. The uncoupling is effected by pulling the lever at the side of the car.

Berman's evidence is that, when the cars were shunted down, they were supposed to couple by impact, and that he had been instructed to see that this coupling was accomplished. He says that he had ridden a car down, applied the brakes, and stopped it at the proper place, and that upon getting off the car he found that another one had been shunted down, and had stopped behind the one on which he had ridden, without coupling to it. Both the car on which he rode and the one immediately following it came from the 16 cars covered by the stipulation. Upon examining the car which was about 20 feet behind the one on which he had ridden, he said he made an effort to open the coupler or knuckle, by operating the cutting lever, but it would not operate; that he looked up towards the train and saw nothing in sight, and saw that the track was clear and that nothing was coming down the track on which he was standing; that when he went behind the car, he found the knuckle closed and the attachment between the cutting lever and the knuckle detached, which was a link or chain attachment; and when he was endeavoring to open the knuckle he was caught between the cars, and the injury resulted. He testifies that it was impossible to effect an adjustment of the coupling knuckle without going between the end of the car on which he was and the one he had just ridden down.

It was clearly a question of fact, for the jury to determine, whether under these circumstances the defendant was guilty of a violation of the Safety Appliance Acts, resulting in the injury to the plaintiff. Not only so, but it would appear that the finding of the jury was in harmony with the evidence. No error appears in the court's charge with respect to the question of contributory negligence. The jury was told that, if the plaintiff was not engaged in interstate commerce, he could not recover; that, if so engaged, they must take into further consideration the circumstances. They were told that if the coupler was defective or improper, but the plaintiff at the time was not engaged in interstate commerce, he could not recover. The court further instructed the jury that, if the coupler in question was not defective or improper, the plaintiff could not recover, even though at

the time of the accident, he was engaged in interstate commerce; that under such circumstances he would have assumed the risk of the injury which he received. The defendant's rights were fully protected by the court, and the findings by the jury on all questions which were legally necessary to sustain the verdict were justified by the evidence.

The judgment is therefore affirmed.